IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LONRHO PLC and GEOFFREY WHITE, §
                                §
        Plaintiffs,             §
                                §
v.                              §        CIVIL ACTION NO. H-11-02939
                                §
STARLIGHT INVESTMENTS, LLC,     §
                                §
        Defendant.              §

## MEMORANDUM AND ORDER

Pending is Defendant's Amended Motion to Dismiss (Document No. 14).[1]  Based on the motion, response, reply, and applicable law, the Court concludes as follows.

### I.  Background

Plaintiffs Lonrho Plc ("Lonrho") and Geoffrey White ("White"), who is Lonrho's Chief Executive Officer, seek injunctive and monetary relief against Defendant Starlight Investments, LLC ("Starlight") for violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), common law trademark infringement, unfair competition, and dilution, which arise from Starlight's alleged unauthorized use of Lonrho's protected trademark.  White addi-

---

[1] Defendant's Motion to Dismiss (Document No. 13) is DENIED as moot in light of Defendant having superseded it with its Amended Motion.  Also, in light of Plaintiffs having subsequently obtained admittedly lawful service of process on Defendant's registered agent, Defendant's Motion to Dismiss based on Rules 12(b)(4) and 12(b)(5) is DENIED.

tionally asserts a claim for malicious prosecution against him, claiming that Defendant initiated a baseless arbitral proceeding against him.  Additionally, Plaintiffs seek a declaratory judgment that they are not bound to an arbitration clause between Starlight and Oceanfresh Seafoods Investment, LLC and Oceanfresh Seafoods [Pty] Ltd. (collectively "Oceanfresh").  Starlight asserts that the underlying dispute in this case is subject to an arbitration clause contained in a 2009 contract between Starlight and Oceanfresh, which is the basis for Starlight's instant motion to dismiss this case.

The contract containing the arbitration clause was an Engagement Agreement dated May 28, 2009 that Starlight made with Oceanfresh for Starlight "to provide financial consulting and investment banking services" to Oceanfresh.[2]  The 2009 Starlight/Oceanfresh Agreement contained an "Arbitration and Venue" provision, which in relevant part states:

> The parties, their heirs, agents and any other persons having or claiming to have a legal or beneficial interest in this Agreement described above, including court appointed trustees and receivers will first negotiate in good faith to resolve any dispute arising out of this Agreement . . . .  All disputes under this agreement or between the parties, their parents, subsidiaries, affiliates, officers, directors, employees or agents relating to this Agreement, including any controversy

---

[2] Document No. 14, ex. A at 3.

over the arbitrability of a dispute to this Agreement
shall be submitted to mandatory binding arbitration.[3]

Starlight asserts that this Court is not the proper forum to
resolve Plaintiffs' Lanham Act, malicious prosecution, and other
claims because Plaintiffs are bound to the arbitration clause in
the 2009 Starlight/Oceanfresh Agreement, and thus the proper forum
for resolution of this dispute is the International Centre for
Dispute Resolution with the American Arbitration Association, where
Starlight initiated proceedings in May 2011.[4]   When Starlight and
Oceanfresh made their Agreement in 2009, neither Lonrho nor any of
its subsidiaries or affiliates had any investment interest in
Oceanfresh.   The 2009 Starlight/Oceanfresh Agreement by its terms
was to continue for a period of six months from the date of its
execution and automatically renew for successive six-month periods
unless terminated by any party.   Oceanfresh notified Starlight that
it chose not to renew the Agreement after six months or by late
2009.

Oceanfresh later entered into a subscription agreement
("Investment Agreement") with Lonrho Agri Business (BVI) Ltd. ("LA-
BVI"), pursuant to which LA-BVI purchased a 51% interest in
Oceanfresh.   In a corporate reorganization process, that 51% was
transferred to Protea Seafoods ("Protea"), a wholly owned

---

[3] Document No. 14, ex. A at 12.

[4] Document No. 14 at 1; Document No. 1 at 5.

3

subsidiary of LA-BVI.   Presumably, LA-BVI is a wholly owned
subsidiary of Lonhro because Lonhro in its Complaint alleges that
it owns a "51% interest in Oceanfresh."[5]   It is undisputed that
Lonrho had no ownership interest in Oceanfresh when Starlight and
Oceanfresh made their 2009 Starlight/Oceanfresh Agreement with the
arbitration clause.   It is also undisputed that neither Plaintiff
has ever become a signatory to the 2009 Starlight/Oceanfresh
Agreement.

## II.   Discussion

### A.   Standard of Review

Rule 12(b)(3), which establishes a defense of improper venue,
may be used to seek dismissal based on an arbitration clause.   FED.
R. CIV. P. 12(b)(3); Lim v. Offshore Specialty Fabricators, Inc.,
404 F.3d 898, 902 (5th Cir. 2005).   Once a defendant timely raises
a 12(b)(3) motion, the burden falls on the plaintiff to prove that
the venue is proper.   MaxEn Capital, LLC v. Sutherland, Civ. A. No.
H-08-3590, 2009 WL 936895, at *3 (S.D. Tex. Apr. 3, 2009)
(Rosenthal, J.).   A court deciding a 12(b)(3) motion accepts all of
plaintiff's assertions in the complaint as true and resolves any
ambiguities in favor of plaintiff.   Am. Gen. Life Ins. Co. v.
Rasche, 273 F.R.D. 391, 396 (S.D. Tex. Mar. 22, 2011) (Miller, J.)

---

[5] Document No. 1 at 2.

(quoting <u>Braespetro Oil Servs. Co. v. Modec (USA), Inc.</u>, 240 F. App'x 612, 615 (5th Cir. 2007)).   "To prevail on a motion to dismiss for improper venue, a defendant must present facts that will defeat a plaintiff's assertion of venue." <u>Id.</u>  The court may consider extrinsic evidence when considering the motion.   <u>MaxEn Capital, LLC</u>, 2009 WL 936895, at *3.

B.   <u>Analysis</u>

Plaintiffs assert that venue is proper pursuant to 28 U.S.C. § 1391(a) and (b) "because Defendant resides in this Judicial District, and a substantial part of the events or omissions giving rise to the claims occurred in this Judicial District."[6]  Starlight does not challenge the venue facts asserted by Plaintiffs but rather claims that venue is improper because Plaintiffs are bound to arbitrate their claims against Starlight pursuant to the 2009 Starlight/Oceanfresh Agreement.[7]  "Unless the parties clearly and unmistakeably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."[8]  <u>AT&T Techs., Inc. v. Commc'ns Workers of Am.</u>, 106 S.

---

[6] Document No. 1 at 2.

[7] Document No. 14 at 1.

[8] The Fifth Circuit has held that it is appropriate to look to "the  federal substantive law of arbitrability" to decide the question of whether a non-signatory is bound by an arbitration clause.  <u>Washington Mut. Fin. Grp., LLC v. Bailey</u>, 364 F.3d 260, 267 n.6 (5th Cir. 2004).

5

Ct. 1415, 1418 (1986) (citations omitted).  As a general rule, a party must be a signatory to a contract in order to be bound by an arbitration clause contained therein, and parties that have not signed an arbitration agreement can only be bound by that agreement in rare circumstances.  <u>Bridas S.A.P.I.C. v. Gov't of Turkmenistan</u>, 345 F.3d 347, 354 (5th Cir. 2003).  However, "[o]rdinary principles of contract and agency law may be called upon to bind a nonsignatory to an agreement whose terms have not clearly done so." <u>Id.</u> at 356.  In particular, the Fifth Circuit has recognized six theories for binding a nonsignatory to an arbitration agreement: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, (5) estoppel, and (6) third-party beneficiary.  <u>Id.</u>

Defendant asserts several bases under the theories of agency and estoppel for binding Plaintiffs to the 2009 Starlight/ Oceanfresh Agreement and its arbitration clause.  First, Defendant contends that Lonrho's subsequently acquired ownership interest in Oceanfresh binds it to the 2009 Starlight/Oceanfresh Agreement as a parent or affiliate under the terms of the arbitration clause.[9] Defendant likewise claims that White, as an officer of Lonrho, is bound by the 2009 Starlight/Oceanfresh Agreement as an agent or a

---

[9] Document No. 14 at 2.

6

"person having a legal or beneficial interest" in Oceanfresh.[10]  It is undisputed that neither Lonrho nor White had any ownership of or other relationship with Oceanfresh when the 2009 Starlight/ Oceanfresh Agreement was signed, nor does Starlight claim that it and Oceanfresh intended to or had any ability to bind Plaintiffs when the 2009 Starlight/Oceanfresh Agreement was made.  A Lonrho's subsidiary's later acquisition of Oceanfresh does not make Lonrho a party to the Starlight/Oceanfresh Agreement without consent by Lonrho.  The broad terms of the arbitration clause alone do not bind Plaintiffs to arbitrate because, as discussed above, such a conclusion must be consistent with principles of contract and agency law.  *See* Bridas S.A.P.I.C., 345 F.3d at 356.

Defendant claims that Lonrho and White became agents of Oceanfresh and subject to the contract "by re-negotiating the fee under the contract" between Starlight and Oceanfresh, pointing to emails indicating that White became involved in trying to resolve Starlight's claim that Oceanfresh owed Starlight an additional fee earned under the 2009 Starlight/Oceanfresh Agreement.  Defendants allege White's efforts "culminated with Lonrho and White agreeing to have Lonrho pay Defendant $80,000 and to provide it with future investment banking opportunity [sic] to

---

[10] Id. at 3.

7

resolve the compensation issues under the Engagement Agreement."[11]
Even if Plaintiffs did act as agents of Oceanfresh in attempting
to negotiate a resolution of Starlight's claim for outstanding
fees, Starlight does not allege or point to any evidence that
Plaintiffs ever agreed to bind themselves as parties to the 2009
Starlight/Oceanfresh Agreement. *See* RESTATEMENT (THIRD) OF AGENCY
§ 6.01 (an agent of a disclosed principal is "not a party to the
contract unless the agent and third party agree otherwise").

Starlight also alleges that Plaintiffs are estopped from
claiming that they are not bound by the 2009 Starlight/Oceanfresh
Agreement because "Lonrho accepted the benefits of the contract
with Starlight both in the acquisition of Oceanfresh and the
subsequent re-negotiation and payment of Starlight's fee."[12]
"Direct-benefit estoppel involves non-signatories who, during the
life of the contract, have embraced the contract despite their non-
signatory status but then, during litigation, attempt to repudiate
the arbitration clause in the contract." Hellenic Invs. Fund, Inc.
v. Det Norske Veritas, 464 F.3d 514, 517-18 (5th Cir. 2006)
(citation omitted).  "A non-signatory can 'embrace' a contract
containing an arbitration clause in two ways: (1) by knowingly
seeking and obtaining 'direct benefits' from that contract; or
(2) by seeking to enforce the terms of that contract or asserting

---

[11] Document No. 18 at 3-4.

[12] Id. at 5.

claims that must be determined by reference to that contract." Noble Drilling Servs., Inc. v. Certex USA, Inc., 620 F.3d 469, 473 (5th Cir. 2010).

As for the second of these alternatives, Plaintiffs are not seeking to enforce the Starlight/Oceanfresh Agreement nor do they assert any claims for recovery from Starlight that depend upon reference to that contract.

Likewise, as to the first alternative, there is no showing that Plaintiffs ever obtained or that they seek to obtain any direct benefit from the 2009 Starlight/Oceanfresh Agreement. Starlight contends that Lonrho benefitted from the Agreement by its "acquisition of Oceanfresh" and by "subsequent re-negotiation and payment of Starlight's fee." These are not "direct benefits" to Plaintiffs from the Starlight/Oceanfresh Agreement such as to bind Plaintiffs to the Agreement by estoppel. Lonrho acquired Oceanfresh pursuant to a separate agreement between those parties and to which Starlight was not a party and had no knowledge of. Any direct benefits received by Lonrho from its acquisition of Oceanfresh were due to the Lonrho/Oceanfresh purchase agreement, not the Starlight/Oceanfresh Agreement. If under the latter agreement Starlight introduced Oceanfresh and Lonrho, that introduction at most would be only an attenuated or indirect benefit to Lonrho and wholly insufficient to bind it as a party to the Starlight/Oceanfresh Agreement by principles of estoppel.

9

*See* MaxEn Capital, LLC, 2009 WL 936895, at *5 (when plaintiffs do not bring suit based on an agreement containing an arbitration clause, direct-benefit estoppel cases have focused on "whether the evidence showed that the nonsignatory received direct and substantial benefits from th[e] agreement"); Zurich Am. Ins. Co. v. Watts Indus., Inc., 417 F.3d 682, 688 (7th Cir. 2005) (direct-benefits estoppel not applicable when the nonsignatory did not seek to enforce any rights under the agreements containing the arbitration clause and any benefits available under those agreements were too attenuated and indirect to force arbitration under an estoppel theory). Moreover, after Lonrho acquired Oceanfresh, its negotiation in behalf of Oceanfresh of Starlight's fee claim provided no direct benefit to Lonrho *under the Starlight/Oceanfresh Agreement*. Or, in other words, the only thing that Lonrho is shown to have received as a result of the 2009 Starlight/Oceanfresh Agreement was Starlight's claim against Oceanfresh for an unpaid fee, that is, a potential liability for its newly acquired subsidiary, which obviously was of no benefit to Lonrho. Overall, construing all ambiguities in favor of Plaintiffs, there is insufficient evidence to find that venue is improper in this Court for Plaintiffs' Lanham Act and other claims filed in this suit, which in no manner depend upon or seek benefits under the Starlight/Oceanfresh Agreement. Accordingly, it is hereby

ORDERED that Defendant's Motion to Dismiss based on improper venue and/or insufficient service of process or insufficient process (Document No. 14) is DENIED.

The Clerk will enter this Order, providing a correct copy to all parties of record.

SIGNED at Houston, Texas, on this 27th day of January, 2012.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

11